**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF DELAWARE**

| | | |
|---|---|---|
| DUPONT SAFETY & CONSTRUCTION, INC., and DUPONT SPECIALTY PRODUCTS USA, LLC, | ) ) ) | |
| | ) | |
| Plaintiffs, | ) | C.A. No. _____ |
| | ) | |
| v. | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| HUTCHINSON SA, and HUTCHINSON AEROSPACE & INDUSTRY, INC. | ) ) | |
| | ) | |
| Defendants. | ) | |

## COMPLAINT

DuPont Safety & Construction, Inc. ("DuPont S&C") and DuPont Specialty Products USA, LLC ("DuPont S&P USA") (collectively, "DuPont") by and through their undersigned attorneys, bring this Complaint for patent infringement against Defendants Hutchinson SA and Hutchinson Aerospace & Industry, Inc. ("Hutchinson Aerospace") (collectively, "Hutchinson"), and allege as follows:

## NATURE OF THE ACTION

1.      DuPont brings this action against Hutchinson to seek injunctive and monetary relief for the repeated and ongoing violations of DuPont's legal rights.  This includes Hutchinson's patent infringement under 35 U.S.C. § 271 et seq. of DuPont's U.S. Patent No. 8,607,926 ("'926 Patent") and DuPont's U.S. Patent No. 8,607,927 ("'927 Patent") (collectively, the "Asserted Patents"), attached hereto as Exhibits A and B, respectively.

## THE PARTIES

2.      DuPont S&C is a corporation organized and existing under the laws of the State of Delaware, with a principal place of business at 974 Centre Road, Chestnut Run Plaza, Wilmington, Delaware 19805.  DuPont S&C is the assignee of the Asserted Patents.

3.     DuPont S&P USA is a company organized and existing under the laws of the State of Delaware, with a principal place of business at 974 Centre Road, Chestnut Run Plaza, Wilmington, Delaware 19805.  DuPont S&P USA is the exclusive licensee of the Asserted Patents.

4.     Hutchinson Aerospace is a Delaware corporation and subsidiary of Hutchinson SA with its principal place of business at 82 South Street, Hopkinton, Massachusetts 01748.  Service may be made upon its registered agent at 251 Little Falls Drive, Wilmington, Delaware 19808.

5.     Hutchinson SA is a public limited company organized under the laws of France and having a principal place of business at 2, Rue Balzac, 75008 Paris, France and is the ultimate parent company to Hutchinson Aerospace.

## JURISDICTION AND VENUE

6.     This is an action for patent infringement arising under the patent laws of the United States, Title 35 of the United States Code.  This Court has jurisdiction over this patent infringement action pursuant to 28 U.S.C. §§ 1331 and 1338.

7.     Venue is proper in this District.  Venue is proper as to Hutchinson Aerospace because it is a corporation existing under the laws of the State of Delaware and resides in Delaware for purposes of venue.  *See* 28 U.S.C. § 1400(b).  Venue is proper as to a foreign defendant in any district.  28 U.S.C. § 1391(c)(3); *In re HTC Corp.*, 889 F.3d 1349 (Fed. Cir. 2018).  Defendant Hutchinson SA is a foreign corporation organized under the laws of France, with a principal place of business in France.

8.     This Court has personal jurisdiction over Hutchinson Aerospace because it is a corporation existing under the laws of the State of Delaware.

9.     This Court has personal jurisdiction over Hutchinson SA and Hutchinson Aerospace because they conduct business in this District, including engaging in the manufacture of products to be sold in this District, engaging in the sale, offer for sale, and/or distribution of

products in this District, and engaging in contractual negotiations with DuPont S&P in this District related to the subject matter of this suit.

10.    Hutchinson SA is a global industrial giant, priding itself on its "international presence" and promoting and selling its products to industry leaders, in aerospace and others, across the globe.  *See* Ex. C (https://www.hutchinson.com/en/our-group). Hutchinson SA's physical presence likewise reaches globally, with nearly one hundred locations, including major manufacturing and distribution locations in the United States. *See* Ex. D (https://www.hutchinson.com/en/our-locations?page=0&country=&activity=); Ex. E (https://www.hutchinson.com/en/our-locations?page=0&country=United%20States&activity=).

11.    Upon information and belief, Hutchinson SA manufactures products and sells, offers for sale, and/or distributes those products, including the Accused Product described herein, in this District and throughout the United States by use of its website, Hutchinson.com, and in coordination with Hutchinson Aerospace and other subsidiaries.

## FACTUAL BACKGROUND

12.    This case involves DuPont's patents covering flame barrier laminates for use in thermal acoustic blankets.  The blankets protect airline passengers and crew from fire and flame propagation, and their laminates must be flexible, thin, and lightweight to meet Federal Aviation Administration regulations.

13.    Consistent with DuPont's nearly half century of supplying the aerospace industry with a variety of innovative products, DuPont developed a laminate using its proprietary Nomex® XF technology in response to the aerospace industry's need for a new generation of thermal acoustic blankets.  DuPont protects it proprietary technology with foreign and domestic patents,

including the Asserted Patents at issue here.  True and correct copies of the '926 and '927 Patents are attached hereto as Exhibits A and B, respectively.

14.     Specifically, the inventors of the Asserted Patents, DuPont's Ley Richardson and Dariusz Kawka, developed a multilayer laminate comprising a polymeric film layer, an adhesive layer, and an inorganic refractory layer "having reduced weight and improved resistance to flame spread." Ex. A col. 1 ll. 26-27.  An example is reflected in the following figure wherein item 10 represents the laminate, item 11 represents the film layer, item 12 represents the adhesive, and item 13 represents the refractory layer:



Ex. A Figure 1; Ex. A col. 1 ll. 47-50.

15.     Hutchinson is not the first competitor to infringe one of the Asserted Patents.  In 2013, DuPont filed suit against Unifrax I LLC for infringement of the '926 Patent.  After years of litigation, DuPont obtained a judgment of infringement, no invalidity, damages and an injunction for the life of the '926 Patent.  This judgment was upheld on appeal to the Federal Circuit.

### Hutchinson's Infringing Activities

16.     Hutchinson makes, uses, sells, offers to sell, and/or imports laminate materials that prevent fires outside the aircraft from penetrating the fuselage, including, but not limited to its TERFLAME® 29 product ("Accused Product").  Upon information and belief, Hutchinson sells the Accused Product to Airbus.



Ex. F (https://www.hutchinson.com/en/products/terflame-0).

17.     Hutchinson directly competes with DuPont including with respect to the Accused Product, and routinely competes with DuPont for access to and sales in the same distribution channels, including distribution channels in Delaware.

18.     Hutchinson and its subsidiaries have been aware of DuPont's foreign and domestic patents covering this technology for many years.  Indeed, Hutchinson (through its subsidiary, Jehier SAS), filed an opposition on October 16, 2013, before the European Patent Office ("EPO") to DuPont's EP 2 421 750 ("EP Patent"), on related technology to the Asserted Patents. The EPO rejected its opposition on February 20, 2020, and Hutchinson recently withdrew its appeal of the rejection.

19.     In connection with its unauthorized activities as set forth herein, Hutchinson is infringing DuPont's patented technology as claimed in the '926 and '927 Patents, and causing DuPont irreparable harm.

**First Cause of Action**
**Infringement of the '926 Patent**

20.     DuPont incorporates by reference and realleges each of the allegations set forth in the foregoing paragraphs of this Complaint.

21.     DuPont S&C is the owner by assignment of all title, right, and interest in and to the '926 Patent, entitled "Composite Flame Barrier Laminate for a Thermal and Acoustic Insulation Blanket."

22.     DuPont S&P USA is the exclusive licensee of the '926 Patent.

23.     The '926 Patent was duly and legally issued by the United States Patent and Trademark Office after a full and fair examination on December 17, 2013.

24.     DuPont's Nomex® XF laminate material practices the '926 Patent and is in use in commercial aircraft today. An image of DuPont's Nomex® XF laminate material is shown below:



Ex. G (https://www.prweb.com/releases/dupont-protection-tech/nomex-xf-aircraft-safety/prweb11190058.htm).

25.     Without any authority from DuPont, Hutchinson makes, uses, sells, offers to sell, and/or imports in the United States, including in this District, the Accused Product, which is shown below:



Our Terflame solution prevents fires outside the aircraft from penetrating the fuselage. It's an incredibly effective barrier and guarantees long-term passenger safety. Thanks to its durability, it has a very low maintenance cost. Hutchinson's Thermal and Acoustic Insulation Systems significantly improve acoustic performance inside the aircraft while protecting it from fires. They're fitted to the fuselage or interior trim panels.

⊙  Products Family: **Thermal and Acoustic Insulation Systems**

Ex. F (https://www.hutchinson.com/en/products/terflame-0).

26.     By its unauthorized making, using, selling, offering to sell, and/or importing the Accused Product, Hutchinson has been and still is infringing one or more claims of the '926 Patent, literally or under the doctrine of equivalents.

27.     By way of example only, Hutchinson's unauthorized actions of making, using, selling, offering to sell, and/or importing the Accused Product constitute direct infringement of at least claim 1 of DuPont's '926 Patent in violation of 35 U.S.C. § 271(a).

28.     For example, on information and belief, Hutchinson's Accused Product meets each and every limitation of claim 1 of the '926 Patent, literally and/or under the doctrine of equivalents.

29.   The Accused Product is "[a] multilayer laminate for use as a flame barrier layer for an aircraft":



Our Terflame solution prevents fires outside the aircraft from penetrating the fuselage. It's an incredibly effective barrier and guarantees long-term passenger safety. Thanks to its durability, it has a very low maintenance cost. Hutchinson's Thermal and Acoustic Insulation Systems significantly improve acoustic performance inside the aircraft while protecting it from fires. They're fitted to the fuselage or interior trim panels.

⊙  <u>Products Family:</u> **Thermal and Acoustic Insulation Systems**

Ex. F (https://www.hutchinson.com/en/products/terflame-0).

30.   Further, testing of the Accused Product shows that the Accused Product has at least the following bonded layers:

- A first polymeric film;

- A first adhesive layer with an embedded reinforcing scrim;

- A mica platelet layer;

- A second adhesive layer with an embedded reinforcing scrim; and

- A second polymeric film.

8

31.     An image of the bonded layers is shown below:





32.     The Accused Product comprises "(i) a polymeric film layer capable of withstanding a temperature of at least 200 C for at least 10 min."  Testing of the Accused Product shows that the Accused Product has at least five bonded layers, including a first polymeric film.  Further, publicly available information about Hutchinson's materials and structures states that their materials "can withstand flames at 1,100°C for 15 minutes in the event of an engine fire."  Ex. H (https://www.hutchinson.com/en/materials-and-structures).

33.     The Accused Product comprises "(ii) an adhesive layer having an areal weight of from 2 to 40 gsm capable of activation at a temperature of from 75 to 200 degrees C."  Testing of the Accused Product shows that the Accused Product has at least five bonded layers, including a first adhesive layer:





34.     Further, on information and belief, the Accused Product comprises a silicone-based adhesive layer.  The specific gravity range for typical silicone-based adhesives is approximately 0.95 to over 1.20 g/cm³. That is, on information and belief, the aerial weight of the adhesive layer in the Accused Product would be between 2 to 40 gsm.  Silicone-based adhesives are used due to their flexibility and temperature characteristics as well as their ability to bind unlike dissimilar substrates. High temperature silicone adhesive can withstand temperatures in excess of 600° For 315° C and is resistant to aging, vibrations, and shock. Ex. I (https://www.iqsdirectory.com/articles/adhesive/silicone-adhesives.html).  However, when silicone-based adhesives are exposed to temperatures above 200 °C, chemical degradation starts impacting some of their physical properties. The property that shows the highest and fastest degree of degradation is the elongation meaning that silicone-based adhesive becomes brittle when heated above 200 °C.

Ex. J https://www.circuitinsight.com/pdf/exploring_high_temperature_reliability_limits_ipc.pdf).
Thus, silicone-based adhesives would maintain their adhesive properties and bond to the polymeric
film layer and the refractory layer within the specified temperature range of from 75 to 200 degrees
C, would remain highly elastic at low temperatures (*e.g.*, -75°C), and would have temperature
stability (*e.g.*, up to 200°C). Ex. I (https://www.iqsdirectory.com/articles/adhesive/silicone-
adhesives.html).

36. The properties of silicones remain virtually unchanged over this temperature range.
Thus, on information and belief, the Accused Product has an adhesive layer that maintains its
adhesive properties and has the ability to bond within the claimed temperature range.

36. The Accused Product comprises "(iii) an inorganic refractory layer." Testing of the
Accused Product shows that the Accused Product has at least five bonded layers, including a mica
platelet layer.

37. On information and belief, the inorganic refractory layer of the Accused Product
"(iii) comprises platelets in an amount of 100% by weight with a dry areal weight of 15 to 50 gsm."
Upon information and belief, the Accused Product does not include a carrier or additive, and thus
comprises platelets in an amount of 100% by weight. Further, on information and belief, the
Accused Product uses mica from Cogebi, which has a dry areal weight of 30 gsm. Ex. K
(https://www.cogebi.com/mica-products/aeronautics/fire-protection-and-thermal-insulation-for-
aircrafts).

38. Testing of the Accused Product indicates that its inorganic refractory layer has a
residual moisture content lower than 10 percent by weight at ambient conditions.

39. Hutchinson has had knowledge of the '926 Patent and its infringing conduct since
no later than February 15, 2022.

40.     Hutchinson's unauthorized actions of making, using, selling, offering to sell, and/or importing the Accused Product constitute direct infringement of Hutchinson's '926 Patent.   35 U.S.C. § 271(a).

41.     In addition to directly infringing, on information and belief, Hutchinson has indirectly infringed and continues to indirectly infringe one or more claims of the '926 Patent, including at least claim 1 as previously alleged, by actively inducing others to directly infringe the '926 Patent in violation of 35 U.S.C. § 271 (b).   Specifically, and in light of the knowledge of the '926 Patent by Hutchinson, (at least by February 15, 2022), Hutchinson knowingly induced infringement of the '926 Patent with specific intent to do so by its activities relating to the sales and offers to sell the Accused Product to its purchasers, for example Airbus or Airbus' suppliers, and by instructing and encouraging purchasers to use the Accused Product in an infringing manner with knowledge that these actions would infringe the '926 Patent.

42.     On information and belief, Hutchinson has also contributed to infringement of the '926 Patent by others by selling or offering to sell products that constitute a material part of the '926 Patent claimed inventions, that are especially made and/or adapted for infringing the '926 Patent and are not staple articles of commerce suitable for substantial non-infringing use and that have been sold to purchasers, for example Airbus or Airbus' suppliers, who infringe the '926 Patent. Specifically, and in light of the knowledge of the '926 Patent by Hutchinson as previously alleged, Hutchinson had knowledge that the Accused Product was specifically made and/or adapted for infringement of the '926 Patent and is not a staple article of commerce suitable for substantial non-infringing use.

43.     Hutchinson's infringement of the '926 Patent is willful, wanton, deliberate because Hutchinson intentionally infringed the '926 Patent despite knowledge of the facts underlying the infringement.

44.     Hutchinson's actions resulting in infringement of the '926 Patent render this an exceptional case, justifying an award to DuPont of its reasonable attorney fees in accordance with 35 U.S.C. § 285.

45.     As a direct and proximate result of Hutchinson's infringement, DuPont has been, is being, and will be irreparably and monetarily damaged. If Hutchinson's actions are not permanently enjoined, DuPont will continue to suffer irreparable harm for which there is no adequate remedy at law.

**Second Cause of Action**
**Infringement of the '927 Patent**

46.     DuPont incorporates by reference and realleges each of the allegations set forth in the foregoing paragraphs of this Complaint.

47.     DuPont S&C is the owner by assignment of all title, right, and interest in and to the '927 Patent, entitled "Composite Flame Barrier Laminate for a Thermal and Acoustic Insulation Blanket."

48.     DuPont S&P USA is the exclusive licensee of the '927 Patent.

49.     The '927 Patent was duly and legally issued by the United States Patent and Trademark Office after a full and fair examination on December 17, 2013.

50.     DuPont's Nomex® XF laminate material practices the '927 Patent and is in use in commercial aircraft today.  An image of DuPont's Nomex® XF laminate material is shown below:



Ex. G (https://www.prweb.com/releases/dupont-protection-tech/nomex-xf-aircraft-safety/prweb11190058.htm).

51.     Without any authority from DuPont, Hutchinson makes, uses, sells, offers to sell, and/or imports in the United States, including in this District, the Accused Product, which is shown below:



Our Terflame solution prevents fires outside the aircraft from penetrating the fuselage. It's an incredibly effective barrier and guarantees long-term passenger safety. Thanks to its durability, it has a very low maintenance cost. Hutchinson's Thermal and Acoustic Insulation Systems significantly improve acoustic performance inside the aircraft while protecting it from fires. They're fitted to the fuselage or interior trim panels.

⊙  Products Family: **Thermal and Acoustic Insulation Systems**

Ex. F (https://www.hutchinson.com/en/products/terflame-0).

52.     By its unauthorized making, using, selling, offering to sell, and/or importing the Accused Product, Hutchinson has been and still is infringing one or more claims of the '927 Patent, literally or under the doctrine of equivalents.

53.     By way of example only, Hutchinson's unauthorized actions of making, using, selling, offering to sell, and/or importing the Accused Product constitute direct infringement of at least claim 1 of DuPont's '927 Patent in violation of 35 U.S.C. § 271(a).

54.     For example, on information and belief, Hutchinson's Accused Product meets each and every limitation of claim 1 of the '927 Patent, literally and/or under the doctrine of equivalents.

55.     The Accused Product is "[a] multilayer laminate for use as a flame barrier layer for an aircraft":



Our Terflame solution prevents fires outside the aircraft from penetrating the fuselage. It's an incredibly effective barrier and guarantees long-term passenger safety. Thanks to its durability, it has a very low maintenance cost. Hutchinson's Thermal and Acoustic Insulation Systems significantly improve acoustic performance inside the aircraft while protecting it from fires. They're fitted to the fuselage or interior trim panels.

◉   Products Family: **Thermal and Acoustic Insulation Systems**

Ex. F (https://www.hutchinson.com/en/products/terflame-0).

56.     Further, testing of the Accused Product shows that the Accused Product has at least the following bonded layers:

- A first polymeric film;

- A first adhesive layer with an embedded reinforcing scrim;

- A mica platelet layer;

- A second adhesive layer with an embedded reinforcing scrim;

- A second polymeric film.

57.    An image of the bonded layers is shown below:





58.    The Accused Product comprises "(i) a first polymeric film layer capable of withstanding a temperature of at least 200 C for at least 10 min." Testing of the Accused Product shows that the Accused Product has at least five bonded layers, including a first polymeric film. Further, publicly available information about Hutchinson's materials and structures states that their materials "can withstand flames at 1,100°C for 15 minutes in the event of an engine fire." Ex. H (https://www.hutchinson.com/en/materials-and-structures).

59.    The Accused Product comprises "(ii) a first adhesive layer having an areal weight of from 2 to 40 gsm capable of activation at a temperature of from 75 to 200 degrees C." Testing

of the Accused Product shows that the Accused Product has at least five bonded layers, including a first adhesive layer:





60.     Further, on information and belief, the Accused Product comprises a first silicone-based adhesive layer. The specific gravity range for typical silicone-based adhesives is approximately 0.95 to over 1.20 g/cm$^3$.  That is, on information and belief, the aerial weight of the adhesive layer in the Accused Product would be between 2 to 40 gsm.  Silicone-based adhesives are used due to their flexibility and temperature characteristics as well as their ability to bind unlike dissimilar substrates. High temperature silicone adhesive can withstand temperatures in excess of 600° For 315° C and is resistant to aging, vibrations, and shock. Ex. I (https://www.iqsdirectory.com/articles/adhesive/silicone-adhesives.html).     However, when silicone-based adhesives are exposed to temperatures above 200 °C, chemical degradation starts impacting some of their physical properties. The property that shows the highest and fastest degree

of degradation is the elongation meaning that silicone-based adhesive becomes brittle when heated above 200 °C.

Ex. J https://www.circuitinsight.com/pdf/exploring_high_temperature_reliability_limits_ipc.pdf).

Thus, silicone-based adhesives would maintain their adhesive properties and bond to the polymeric film layer and the refractory layer within the specified temperature range of from 75 to 200 degrees C, would remain highly elastic at low temperatures (*e.g.*, -75°C), and would have temperature stability (*e.g.*, up to 200°C).  The properties of silicones remain virtually unchanged over this temperature range.  Ex.  I  (https://www.iqsdirectory.com/articles/adhesive/silicone-adhesives.html).

61.     Thus, on information and belief, the Accused Product has a first adhesive layer that maintains its adhesive properties and has the ability to bond within the claimed temperature range.

62.     The Accused Product comprises "(iii) an inorganic refractory layer."  Testing of the Accused Product shows that the Accused Product has at least five bonded layers, including a mica platelet layer.

63.     The Accused Product comprises "(iv) a second adhesive layer having an areal weight of from 2 to 40 gsm capable of activation at a temperature of from 75 to 200 degrees C."  Testing of the Accused Product shows that the Accused Product has at least five bonded layers, including a second adhesive layer:





full 20.0kV 9.9mm x60 BSE-ALL 30Pa                                    500µm

64.     Further, on information and belief, the Accused Product comprises a second silicone-based adhesive layer.  The specific gravity range for typical silicone-based adhesives is approximately 0.95 to over 1.20 g/cm$^3$.  That is, on information and belief, the aerial weight of the adhesive layer in the Accused Product would be between 2 to 40 gsm.  Silicone-based adhesives are used due to their flexibility and temperature characteristics as well as their ability to bind unlike dissimilar substrates. High temperature silicone adhesive can withstand temperatures in excess of 600° F or 315° C and is resistant to aging, vibrations, and shock. Ex. I (https://www.iqsdirectory.com/articles/adhesive/silicone-adhesives.html).  However, when silicone-based adhesives are exposed to temperatures above 200 °C, chemical degradation starts impacting some of their physical properties. The property that shows the highest and fastest degree of degradation is the elongation meaning that silicone-based adhesive becomes brittle when heated above 200 °C.

Ex. J (https://www.circuitinsight.com/pdf/exploring_high_temperature_reliability_limits_ipc.pdf).

Thus, silicone-based adhesives would maintain their adhesive properties and bond to the polymeric film layer and the refractory layer within the specified temperature range of from 75 to 200 degrees C, would remain highly elastic at low temperatures (e.g., -75°C), and would have temperature stability (e.g., up to 200°C). The properties of silicones remain virtually unchanged over this temperature range. Ex. I (https://www.iqsdirectory.com/articles/adhesive/silicone-adhesives.html).

65.     Thus, on information and belief, the Accused Product has an adhesive layer that maintains its adhesive properties and has the ability to bond within the claimed temperature range.

66.     The Accused Product comprises "(v) a second polymeric film layer capable of withstanding a temperature of at least 200 C for at least 10 min." Testing of the Accused Product shows that the Accused Product has at least five bonded layers, including a second polymeric film layer. Further, publicly available information about Hutchinson's materials and structures states that their materials "can withstand flames at 1,100°C for 15 minutes in the event of an engine fire." Ex. H (https://www.hutchinson.com/en/materials-and-structures).

67.     On information and belief, "at least one of the first or second polymeric film layers" of the Accused Product is "thermoplastic." On information and belief, the Accused Product comprises a first polymeric film layer comprises a polymer in the Polyaryletherketone family, for example PEEK. On information and belief, the Accused Product comprises a second polymeric film layer, for example PET or PVF. All of these polymeric films are thermoplastics.

68.     On information and belief, the inorganic refractory layer of the Accused Product "(iii) comprises platelets in an amount of 100% by weight with a dry areal weight of 15 to 50 gsm." Upon information and belief, the Accused Product does not include a carrier or additive, and thus comprises platelets in an amount of 100% by weight.

69.    Further, on information and belief, the Accused Product uses mica from Cogebi, for its inorganic refractory layer, which has a dry areal weight of 30 gsm.   Ex. K (https://www.cogebi.com/mica-products/aeronautics/fire-protection-and-thermal-insulation-for-aircrafts).

70.    Testing of the Accused Product indicates that its inorganic refractory layer has a residual moisture content lower than 10 percent by weight at ambient conditions.

71.    Hutchinson has had knowledge of the '927 Patent and its infringing conduct since no later than February 15, 2022.

72.    Hutchinson's unauthorized actions of making, using, selling, offering to sell, and/or importing the Accused Product constitute direct infringement of Hutchinson's '927 Patent.   35 U.S.C. § 271(a).

73.    In addition to directly infringing, on information and belief, Hutchinson has indirectly infringed and continues to indirectly infringe one or more claims of the '927 Patent, including at least claim 1 as previously alleged, by actively inducing others to directly infringe the '927 Patent in violation of 35 U.S.C. § 271 (b).   Specifically, and in light of the knowledge of the '927 Patent by Hutchinson, (at least by February 15, 2022), Hutchinson knowingly induced infringement of the '927 Patent with specific intent to do so by its activities relating to the sales and offers to sell the Accused Product to its purchasers, for example Airbus or Airbus' suppliers, and by instructing and encouraging purchasers to use the Accused Product in an infringing manner with knowledge that these actions would infringe the '927 Patent.

74.    On information and belief, Hutchinson has also contributed to infringement of the '927 Patent by others by selling or offering to sell products that constitute a material part of the '927 Patent claimed inventions, that are especially made and/or adapted for infringing the '927

Patent and are not staple articles of commerce suitable for substantial non-infringing use and that have been sold to purchasers, for example Airbus or Airbus' suppliers, who infringe the '927 Patent. Specifically, and in light of the knowledge of the '927 Patent by Hutchinson as previously alleged, Hutchinson had knowledge that the Accused Product was specifically made and/or adapted for infringement of the '927 Patent and is not a staple article of commerce suitable for substantial non-infringing use.

75.     Hutchinson's infringement of the '927 Patent is willful, wanton, deliberate because Hutchinson intentionally infringed the '927 Patent despite knowledge of the facts underlying the infringement.

76.     Hutchinson's actions resulting in infringement of the '927 Patent render this an exceptional case, justifying an award to DuPont of its reasonable attorney fees in accordance with 35 U.S.C. § 285.

77.     As a direct and proximate result of Hutchinson's infringement, DuPont has been, is being, and will be irreparably and monetarily damaged.  If Hutchinson's actions are not permanently enjoined, DuPont will continue to suffer irreparable harm for which there is no adequate remedy at law.

## **PRAYER FOR RELIEF**

Wherefore, DuPont respectfully requests that the Court enter judgment in its favor against Hutchinson, granting the following relief:

A.     An adjudication that Defendants have infringed one or more claims of the Asserted Patents literally and/or under the doctrine of equivalents;

B.     An adjudication that Defendants' infringement of the Asserted Patents is willful;

C.     A grant of a permanent injunction pursuant to 35 U.S.C. § 283, enjoining Defendants and their agents, servants, officers, directors, employees, affiliated

entities, and all persons in active concert or participation with it from continued infringement of the Asserted Patents;

D.      An award to DuPont of damages adequate to compensate DuPont for Defendants' acts of infringement of the Asserted Patents;

E.      An award to DuPont equal to any profits that Defendants gained from their infringement of the Asserted Patents;

F.      An award of prejudgment and post-judgment interest on all sums awarded;

G.      An award to DuPont of costs and disbursements for this lawsuit;

H.      An award to DuPont of enhanced damages under 35 U.S.C. § 284 as a result of Hutchinson's willful infringement;

I.      A declaration that this is an exceptional case under 35 U.S.C. § 285 and awarding DuPont its reasonable attorney fees, costs, and expenses;

J.      A post-verdict and post-judgment accounting for any infringement of the Asserted Patents not otherwise covered by a damages award and the requested injunctive relief; and

K.      An award to DuPont of any further relief the Court deems just and proper.

## **JURY DEMAND**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, DuPont respectfully requests a jury trial on all issues so triable.

Respectfully submitted,

POTTER ANDERSON & CORROON LLP

OF COUNSEL:

By: */s/ David E. Moore*

David E. Moore (#3983)

Kathryn L. Clune

Bindu A. Palapura (#5370)

Karla Arias, Dr. sc. nat.

Brandon R. Harper (#6418)

CROWELL & MORING LLP

Carson R. Bartlett (#6750)

1001 Pennsylvania Avenue

Hercules Plaza, 6th Floor

Washington, DC 20004-2595

1313 N. Market Street

Tel: (202) 624-2500

Wilmington, DE  19801

Tel:  (302) 984-6000

dmoore@potteranderson.com

bpalapura@potteranderson.com

bharper@potteranderson.com

cbartlett@potteranderson.com

Dated:  June 16, 2022

*Attorneys for Plaintiffs DuPont Safety &*

10195393/00195.04095

*Construction, Inc. and DuPont Specialty*

*Products USA, LLC*